No. 47,521

Leroy Black Lumber Co., Inc., *Appellee—Cross-Appellant,* v.
The Bremen Farmers' Mutual Insurance Company, *Appellant
Cross-Appellee.*

530 P. 2d 1209)

Opinion filed January 25, 1975.

*Milo M. Unruh,* of Arn, Mullins, Unruh, Kuhn and Wilson, of Wichita, argued the cause, and H. R. Kuhn, of the same firm, was with him on the brief for the appellant—cross-appellee.

*Gordon Penny,* of Chapin and Penny, of Medicine Lodge, argued the cause, and was on the brief for the appellee—cross-appellant.

The opinion of the court was delivered by

Prager, J.: This is a controversy between a building contractor and an insurance company. The issue presented is whether under the undisputed evidence the building contractor was responsible for extensive damage to a residence resulting from the freezing and bursting of water pipes. The appellant-defendant is the Bremen Farmers' Mutual Insurance Company which carried a homeowner's casualty policy on the building. We will refer to it in this opinion as the insurance company. The appellee-plaintiff—cross-appellant is Leroy Black Lumber Company, Inc. We will refer to it as Black or the lumber company. With the exception of the issue of damages the evidence in the case is undisputed and is essentially as follows: During the year 1971 Leroy Black Lumber Co., Inc., built a house in Kiowa, Kansas, for Mr. and Mrs. Bernard Posch. The house was one-story, with three bedrooms, and built on a concrete slab with no basement. The house had an attic which was not finished for living quarters. During the summer of 1971 the Posches had trouble with the air conditioning. Black replaced a compressor in the unit but it still did not work properly. It would run continuously

and yet not cool the house. When the weather turned cold in late 1971 and early 1972 the Posches began to experience difficulty with the furnace. They were unable to keep the house warm even though the furnace ran continuously. Mr. Posch was advised by one of the persons who worked on the house during its construction that he should look in the attic to see whether the insulation had been installed. He found that the insulation was still rolled up and placed in a corner of the attic. The attic was entirely uninsulated. Obviously Black had failed to complete its work of insulating the attic.

Posch immediately complained to Black. Black sent its employees to complete the insulation in January 1972. Black's employees left the job on February 2, 1972. On the next day, February 3, the Posches discovered that they had no water. They immediately called Black who advised them that the pipes had probably frozen and that they should thaw out by evening. Mr. and Mrs. Posch left for work at 8 o'clock in the morning and returned late that afternoon to find their home flooded by water coming through the ceiling. Mr. Posch testified that as he entered the front door it was like walking into a shower. He immediately turned off the water. On the following morning he went to the attic where he discovered that the water pipes were broken. The water had definitely come from the broken water pipes. Mr. Posch also discovered that the water pipes were still uninsulated. They were lying on the ceiling joists on top of insulation which had been laid by Black's employees under the water pipes. The water pipes themselves were not covered with insulation and were wholly unprotected from the freezing temperatures to be expected in the attic in winter months.

The morning after the damage occurred Mr. Posch met at his home with representatives of Black Lumber Company and with Dwayne Brownlee, the defendant's insurance adjuster. They inspected the house to determine the extent of the water damage. Following their inspection the insurance adjuster turned to Leroy Black, president of the lumber company, and asked him if he would take care of it. Mr. Black told him he would. Instructions were then given by Black to start repair on the house and in due course the repairs were completed. Upon completion of the work Black presented the insurance company a bill for repairs in the amount of $7,220.78. This the insurance company refused to pay.

Because of the extensive water damage the Posches could not occupy their home during the period it was being repaired. The

family stayed at Mr. Posch's employer's house for about two weeks, then moved into a hotel and later rented a house in Kiowa until the repairs were completed. The Posches moved back into their home in April of 1972. While the house was being repaired the insurance company settled the loss with the Posches and obtained from them a release and subrogation receipt by which the Posches assigned to the insurance company whatever claims they had against anyone for water damage to the house and its furnishings. As consideration for the settlement the insurance paid to Mr. and Mrs. Posch sums in the total amount of $3,888.15 for damage to personal property and for additional living expenses which the Posches incurred because they had to move out of their house while it was being repaired. It is clear that the insurance company further agreed to assume any costs of repairing the Posch home.

At this point a controversy arose between Black and the insurance company as to Black's liability for the water damage to the Posch house. The insurance company refused to pay Black's bill for repairs amounting to $7,220.78. The insurance company demanded from Black the sum of $11,091.92 less a credit in the amount of Black's claim which the insurance company contended it was entitled to under their subrogation receipt from the Posches. The parties were at loggerheads and this litigation followed. Throughout the litigation Black's position has been that it repaired the house at the request of the insurance adjuster and therefore it is entitled to be paid for the value of its services in the amount of $7,220.78. The insurance company stipulated that this amount was a reasonable charge for the repair work completed by Black. The defendant insurance company has consistently maintained that Black breached its warranty under its construction contract by failing to perform its work in a good workmanlike manner. The insurance company contended in its counterclaim that the failure to insulate properly the water pipes in Posch's attic caused the pipes to freeze and burst resulting in the water damage to the house and furnishings. Black filed a reply to the counterclaim in which it denied any responsibility for the water loss and in addition pled an affirmative defense of estoppel. Black's theory of estoppel in substance is that since the insurance adjuster requested Black to repair the house without advising Black that payment for the repairs would not be made when completed, the insurance company is estopped from asserting that Black is responsible for any breach of warranty.

With the issues thus determined at the pretrial conference, the case proceeded to trial before a jury. The insurance company admitted that if its cross-claim was denied, then it was liable to Black for the amount claimed for repairs, $7,220.78. At the trial the undisputed facts as set forth above were established by Leroy Black, by Dwayne Brownlee, the insurance adjuster, and by the insured Bernard W. Posch. In addition the insurance company called as its expert witness William T. Slease, a general contractor and home builder from Wichita. Having heard the testimony of Black and Posch, Mr. Slease concluded that "terrible mistakes" were made in the construction of the house. Since the water pipes were in the unheated attic, in his judgment they should have been properly insulated from the extreme cold. It was a mistake to place the insulation under the pipes, because that prevented the heat from the house to come up through the sheetrock in the ceiling and warm the pipes. It was his opinion that if water pipes in the attic are left totally uninsulated, he would expect to have exactly the problem that they had in the Posch house. He stated in substance that when Black laid the insulation under the water pipes in January and February of 1972, the original fault in failing to install the insulation at all was actually compounded. What happened was that the "repair" and the placing of the insulation under the pipes by Black's employees totally cut off all heat from the pipes. He was firm in his opinion that the construction of the Posch house by Black did not meet the ordinary standards of good workmanship since the water pipes had not properly been insulated and protected from the cold. This testimony was absolutely undisputed. We fail to see why the issue of Black's liability was even submitted to the jury by the trial court. The undisputed testimony was that Black, the contractor, had not properly insulated the water pipes in the attic, the water pipes froze, then burst, and the escaping water damaged the Posch's home and its contents.

When the trial court submitted the question of Black's liability to the jury, it refused to instruct on Black's affirmative defense of estoppel. After deliberation the jury returned its verdict in favor of the lumber company in the full amount of its claim, $7,220.78 plus interest, and denied the counterclaim of the insurance company. The defendant insurance company then filed a motion for a new trial and for judgment on its counterclaim. These postjudgment motions were denied by the district court. The insurance company has appealed to this court contending in substance that the

jury verdict was contrary to the uncontroverted and undisputed evidence and that the insurance company was entitled to judgment as a matter of law on its counterclaim. Leroy Black Lumber Company, Inc. has filed a cross-appeal contending that the trial court erred in refusing to give an instruction on its affirmative defense of estoppel.

We will first consider the appeal of Bremen Farmers' Mutual Insurance Company. We have concluded that this case should be reversed and remanded to the district court with directions to retry the case on the sole issue of the damages which the insurance company is entitled to recover under its counterclaim. We are, of course, reluctant to set aside the verdict of a jury. We do not know how the jury in this case could have arrived at its verdict in view of the undisputed and uncontroverted evidence presented at the trial. We are convinced on the record before us that this case presents a proper one for the application of the rule that a jury is not authorized arbitrarily or from partiality or caprice to disregard uncontradicted and unimpeached testimony, nor to disregard the only evidence upon a material question in controversy and return a verdict in direct opposition thereto. (*Lorbeer v. Weatherby*, 190 Kan. 576, 376 P. 2d 926.) We recognize that while it is not the province of this court to weigh the evidence, it may determine that there is or is not sufficient evidence to support the verdict. (*Collins v. Morris*, 97 Kan. 264, 155 Pac. 51.) Here it is agreed that Black constructed the house and installed the insulation. There is no evidence to contradict the fact that the insulation was installed in an unworkmanlike manner and that this caused the water pipes to freeze and burst causing the damage to the Posch home. We cannot find any evidence in the record to justify the contention of appellee Black that the insurance company failed to prove that the lumber company's acts caused the broken pipes or that the pipes were frozen or that freezing caused the pipes to break causing the water to escape. All of these matters were clearly established by the testimony of Leroy Black himself and by the undisputed testimony of William T. Slease, the building inspector from Wichita.

We have concluded that the trial court erred in refusing to enter judgment on the issue of Black's liability for the water damage to the Posch house. The case should have been submitted to the jury solely on the issue of the damages which the insurance company was entitled to recover under its counterclaim. The amount

of damages is clearly in dispute. The insurance company stands in the shoes of its insured, Mr. and Mrs. Posch, and therefore may recover whatever damages the Posches could have recovered from Leroy Black Lumber Company, Inc. had the Posches brought the action. The measure of damages to be applied in this case has not been made an issue on the appeal and has not been briefed by counsel. If there is a dispute as to the measure of damages we will leave that question for the trial court to determine after the parties have presented their evidence at a new trial on that issue.

We now turn to the cross-appeal of Leroy Black Lumber Company, Inc. It is based on the single point that the trial court erred in refusing to submit to the jury estoppel as an affirmative defense to the counterclaim of the insurance company. We have concluded that the trial court was entirely correct in this regard and that this is not a case where a defense of estoppel could be maintained. Ordinarily a party is not estopped by an act which does not mislead his adversary so as to cause him to act to his prejudice or disadvantage. (*Tri-State Hotel Co., Inc. v. Sphinx Investment Co., Inc.*, 212 Kan. 234, 510 P. 2d 1223.) Under the undisputed evidence here the Black Lumber Company was at fault in causing the water damage to the Posch home. We cannot see how Black changed its position in relying on any statements made by the insurance adjuster. The insurance adjuster requested Black to repair the premises on the day immediately following the loss. We can reasonably assume that Black made a profit on its contract to repair the Posch house and that it was to its benefit to make the repairs itself rather than to pay for repairs made by another contractor. We believe that it would work an injustice in this case to apply the doctrine of estoppel since the Black Lumber Company was clearly at fault and should not escape the consequences of its own wrongful act. We hold that the trial court ruled correctly in refusing to submit the issue of estoppel to the jury.

For the reasons set forth above the judgment of the trial court is reversed on the appeal and the case is remanded with directions to the trial court to retry the case on the issue of damages to be recovered on the appellant's counterclaim. We find the cross-appeal without merit and it is denied.

SCHROEDER, J., not participating.